676 So.2d 493 (1996)
Elijah WILLIAMS, Appellant,
v.
Deloris WILLIAMS, Appellee.
No. 95-799.
District Court of Appeal of Florida, Fifth District.
June 28, 1996.
*494 Teresa Byrd Morgan, of Darby, Peele, Bowdoin & Payne, Lake City, for Appellant.
Barbara T. Taylor, Cocoa Beach, for Appellee.
GRIFFIN, Judge.
Elijah Williams, the former husband and custodial parent, appeals an order transferring custody of his nine-year-old son to Deloris Williams, the former wife and mother of the child.
The parties' 1977 marriage was dissolved in 1987. Two children were born of the marriage, a daughter, Tiffany, in 1984 and a son, Terrell, in 1986. The settlement agreement, incorporated in the final judgment of dissolution, granted sole parental responsibility and primary residential custody of both children to Elijah.
In 1989, Elijah moved with the children from Brevard County, Florida, to Thomasville, Georgia. In 1993, he sought an increase in child support. In a counterpetition Deloris sought custody of the children. Those actions culminated in an order transferring primary physical residence of the daughter to Deloris. The trial court noted that Elijah had frustrated visitation, had not kept Deloris apprised of the children's problems and had disparaged Deloris in the children's presence. The court also noted that Tiffany was displaying some unusual behavior which provided additional support for its conclusion that custody of Tiffany should be changed to Deloris.
In 1994, Deloris filed a modification petition in which she sought custody of Terrell. She alleged that it was no longer in the best interests of the children to be separated from each other and that their best interests required that both Tiffany and Terrell be in her primary custody. Deloris also alleged that Elijah had "continually and increasingly interfered with [her] communication and visitation with her son." Elijah countered by seeking a transfer of custody of Tiffany back to him.
*495 During the hearing on the petitions, the trial court heard evidence of Elijah's ongoing frustration of visitation attempts made by Deloris. The lower court cogently found as expressed in its order:
1. The Father, Elijah Williams, has willfully refused to honor the Mother's visitation rights with Elijah Terrell Williams, without just cause. See Section 61.13(4)(c)(2), Florida Statutes. He caused her to drive four hours one way on several occasions only to deny her visitation upon arrival.
2. That it is in the best interest of Elijah Terrell Williams to reside with his Mother, Deloris Williams.
Section 61.13(4)(c)(2), Florida Statutes (1995) provides:
(c) When a custodial parent refuses to honor a noncustodial parent's visitation rights without proper cause, the court may:
* * * * * *
2. Award the custody or primary residence to the noncustodial parent, upon the request of the non-custodial parent, if the award is in the best interests of the child.
Elijah urges on appeal that the lower court granted the change in custody solely because of the frustration of visitation and relies on cases to the effect that frustration of visitation alone will not support a change of custody. The record clearly shows, however, that the "best interests" issue was argued to the lower court and that the court was well informed as to the controlling test for a change of custody.[1]
Section 61.13(3) provides a non-inclusive list of factors which the court is required to evaluate in determining shared parental responsibility, primary residence, and the best interests of the child:
(a) the parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent.
(b) the love, affection, and other emotional ties existing between the parents and the child.
(c) the capacity and disposition of the parents to provide the child with food, clothing, medical care....
(d) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
(e) the permanence, as a family unit, of the existing or proposed custodial home.
(f) the moral fitness of the parents.
(g) the mental and physical health of the parents.
(h) the home, school and community record of the child.
(i) the reasonable preference of the child if the court deems the child to be of sufficient intelligence, understanding and experience to express a preference.
(j) the willingness and ability of each parent to facilitate and encourage a close and continuing parent/child relationship between the child and the other parent.
(k) any other fact considered by the court to be relevant.
In the instant case, there is ample evidence that factors (a) and (j) support the lower court's best interests finding in favor of Terrell's residing with Deloris rather than Elijah. Elijah urges, however, that the lower court could not change custody because Deloris did not offer evidence on the other statutory factors. We disagree and conclude there is enough evidence in the record consistent with section 61.13 to support the lower court's best interests finding.[2]
*496 The record shows that after the previous modification hearing, resulting in Deloris receiving custody of their daughter, Tiffany, Elijah immediately took his son out of the school he had been attending. The child was out of school for a week while Elijah found another schoolwhich is described as "alternative" schooling for grades kindergarten through six, consisting of forty-five students in one room with three teachers and which is unaccredited. Elijah was apparently upset with the first school because he felt Tiffany's teacher had "lied" during the modification trial. He did not tell Deloris about this change in Terrell's school and, when she inquired, told her it was "none of her business." The child's grades at his former school had deteriorated to mostly D's and F's. The school he is in now doesn't give grades, only a check mark to indicate pass/ fail. His progress reports at the new school indicate that he needs to practice more self-discipline and be aware of other children's feelings.[3] It appears that Elijah had not troubled to participate in an interview or conference with the child's teacher at his new school in order to obtain his most recent progress report. Since September 1993, Elijah has given Deloris no reports or records concerning her son's performance or progress. The record also indicates that Tiffany is doing well. There is evidence that Deloris is an excellent mother and that when Terrell is at his mother's, he seems happy with his sister.
The record is further undisputed that on at least two occasions, when Deloris drove in excess of 500 miles to Georgia to exercise visitation, she was told that either the child was not available or no one was home. She subsequently learned that the child was, in fact, home when she was turned away by Elijah.
The record also indicates that the 1993 custody order pursuant to which the lower court had changed custody only of Tiffany to the mother, rather than both children, was predicated upon assurances from Elijah that there would be no visitation problems. This manifestly turned out not to be the case.
In order to establish the best interests of the child under these circumstances, it is not necessary for a parent to succeed by the greater weight of the evidence on each of the various statutory sub-factors relating to custody. In this case, there was a lot of evidence on two factors and some evidence relating to most of the factors. Even aspects of the mental and physical health of the parents was observable, if not proved by expert testimony. In almost every case, some of these statutory factors may be positive, some factors may be neutral and some factors may be negative. As in this case, there may not be a lot of evidence on all the factorsin cases such as this, evidence is not easy to come bybut there certainly is plenty of evidence on several of the relevant factors from which the lower court could have properly concluded that it was in this child's best interest to reside with his mother and sister in the home environment they have created. Deloris proved that the father is making dubious parenting decisions, that he is not communicating with her about the child, and that leaving the child with Elijah will clearly deprive the child of access to a loving, competent mother and to his sister, with whom the evidence shows he had an excellent relationship and in whose company he was very happy. The court does not require expert testimony to determine that this state of affairs is not in the child's best interests; it can make this determination based on its own observation and common sense. Here, the trial court heard ample testimony multiple times of both Elijah Williams and Deloris Williams. In the face of the negative facts about Elijah's parenting and isolation of the child from his mother and sister, Elijah offered nothing positive. There is simply no basis to second guess the trial judge under facts such as these.
AFFIRMED.
*497 W. SHARP, J., concurs.
PETERSON, C.J., dissents, with opinion.
PETERSON, Chief Judge, dissenting.
I do not disagree with the majority that competent substantial evidence exists in the record to support the trial court's finding that Elijah frustrated efforts by Deloris to exercise her right of visitation. If frustration of visitation was the sole statutory criteria under section 61.13(4)(c)(2), I would agree with the majority's affirmance.
But the overall objective under the statute is to determine the best interest of the child, Terrell. It is here that I part company with the majority. My review indicates that the evidence is lacking to meet this test. The majority excuses this by stating that evidence in cases like this is not easy to come by.
I conclude that Elijah lost custody in this case because he frustrated visitation, and Terrell's sister, Tiffany, wanted to reside with her brother. Noticeably absent from the testimony is any input by nine-year-old Terrell, as to his desires in the matter, one of the criteria under section 61.13(3)(i).
Aside from demonstrating Elijah's poor cooperation in the matter of visitation, Deloris tried to show that Elijah made a poor choice in the matter of selecting Terrell's school. The majority points out that Terrell's grades had deteriorated at the former school. Terrell complained to his father about the former school and that he was not being treated fairly because the students were predominately of a different race. Elijah's choice of an alternate school, to deal with his son's complaint, exhibits a father's concern. Terrell's present teacher, a veteran educator, reported that she has a good relationship with the boy and that he appears happy and well-adjusted. She praised Elijah for his parental involvement and his attendance at workshops and seminars. The fact that a report from the school indicates that Terrell needs to practice more self discipline and be aware of other children's feelings is a credit to the faculty's awareness of matters to which attention must be devoted. The majority's observation that this school has a low student-teacher ratio of 15-1 should be a plus.
It should also be noted that Elijah's work and Terrell's school are both in Tallahassee, Florida, although their home is in Thomasville, Georgia. Elijah and Terrell spend time with each other as Elijah drives his son to school each day.
There was ample evidence of a commodious home in Thomasville and Elijah's attention to clothing and nutrition for his son. Elijah's sister resides next door and other family members live hear by. Noticeably absent was any testimony about the features of his new home with Deloris and the schooling that will be furnished there. We do know that Tiffany was forced to attend a public school after doing so well in a private school when Deloris, through inadvertence or pre-design, failed to timely re-enroll her daughter before the classes were filled.
The party seeking to change a custody order carries an extraordinary burden. McGregor v. McGregor, 418 So.2d 1073 (Fla. 5th DCA 1982). This is particularly true where, as here, the party now seeking custody, Deloris, agreed by way of a settlement incorporated in the final judgment, that custody of the children would be with the father. Jablon v. Jablon, 579 So.2d 902 (Fla. 2d DCA 1991). My evaluation indicates that Deloris failed to carry even an ordinary burden in this matter.
I would reverse and continue primary residential custody of Terrell with Elijah with whom he has resided from the time he was a year old and remand to the trial court to fashion a visitation plan that adequately compensates Deloris for her frustration and expenses incurred in attempting to exercise her rights of visitation.
NOTES
[1] Elijah also seems to want to argue that a material change in circumstances is also required. The statute does not require the moving party to establish a "substantial change of circumstances." We conclude that when a non-custodial parent proceeds under section 61.13(4)(c), no substantial change of circumstances is necessary to be proven where a violation of visitation rights is found by the court to have occurred and the court further finds that the best interests of the child lie in transferring custody to the other spouse. Additionally, it seems to us that "a substantial change of circumstances," in fact, is created by the custodial parent's establishment of a continuing and persistent pattern of obstructing the visitation rights of the non-custodial parent.
[2] The dissent recites evidence favorable to Elijah's parenting to counter the lower court's express "best interests" finding. The lower court was not required to believe this evidence or to give it the same weight as the dissent gives it, however. The issue is whether the record contains evidence to support the court's conclusion that the custody change was in the child's best interest.
[3] There was also substantial evidence offered by Elijah that Terrell was doing well in school and was a happy boy, which makes this a question of credibility or a weighing of the various factors which is the province of the trial judge.