820 So.2d 350 (2002)
Terry Lynn WYCKOFF, Appellant,
v.
Douglas M. WYCKOFF, Appellee.
No. 2D00-5342.
District Court of Appeal of Florida, Second District.
April 3, 2002.
*351 J.L. "Ray" LeGrande of LeGrande & LeGrande, P.A., Fort Myers, for Appellant.
David M. Caldevilla of de la Parte & Gilbert, P.A., Tampa, for Appellee.
*352 ALTENBERND, Judge.
The Former Wife, Terry Lynn Wyckoff, appeals a series of orders granting the petition of the Former Husband, Douglas M. Wyckoff, to modify their final judgment of dissolution of marriage. The orders awarded the Former Husband the primary residential responsibility of the minor children and required the Former Wife to pay child support. The Former Wife also appeals the trial court's decision to deny her an award of attorney's fees pursuant to section 61.16, Florida Statutes (2000). Because the Former Husband failed to meet the extraordinary burden required to support a change in custody, and because the trial court abused its discretion in refusing to award the Former Wife attorney's fees, we reverse.
Mr. and Mrs. Wyckoff were married in 1993. Mr. Wyckoff was a practicing attorney during the marriage and continues to practice law. Mrs. Wyckoff worked as a waitress until the parties' children were born. She returned to this employment after the parties separated. The parties have two children, who are now six and eight years old. In March 1998, the parties entered into a marital settlement agreement that was incorporated into a final judgment of dissolution of marriage. This agreement will be described in further detail later in this opinion, but it essentially gave the Former Wife primary residential responsibility of the children.
In August 1998, approximately five months later, the Former Husband filed a petition for modification of the final judgment. He sought primary residential custody of the two minor children and termination of his support obligations. After a three-day trial held in June 2000, the trial court granted the petition. Although it is not clear from our record, it appears the trial court applied a "best interests" standard to evaluate whether there should be a change in the custody of these children, as opposed to the "extraordinary burden" test set forth in Gibbs v. Gibbs, 686 So.2d 639 (Fla. 2d DCA 1996). We conclude that the extraordinary burden test applies, and viewing the evidence in the light most favorable to the Former Husband, the Former Husband did not meet the burden of proof necessary to support a change in custody of the children.
In Gibbs, this court articulated the "extraordinary burden test" a parent must meet to compel a court-ordered change in custody:
First, the party seeking to modify a custody decree must plead and establish that circumstances have substantially changed since the final judgment. This is required to overcome the legal doctrine of res judicata, and probably reflects a general belief that stability is good for children. Second, the petitioner must establish that the change has such an important impact on the child that the court is justified in imposing a change of custody in the "best interests" of the child. Although the "best interests" aspect of this test involves a consideration of the same general factors that are used to make an initial decision, the trial court must understand that the analysis in a modification proceeding is substantially different from when the initial child custody decision is made in the dissolution because the presumption in favor of the custodial parent in the modification proceeding can only be overcome by satisfying an extraordinary burden.
The following review of the cases describing the extraordinary burden test suggests a change of custody is appropriate when, after a review of all of the factors enumerated in section 61.13(3), Florida Statutes, the trial court finds that a change in custody will so clearly *353 promote or improve the child's well-being to such an extent that any reasonable parent would understand that maintaining the status quo would be detrimental to the child's overall best interests. This test involves more than a decision that the petitioning parent's home would be "better" for the child, and requires a determination that there is some significant inadequacy in the care provided by the custodial parent. At this extraordinary level, the trial court may veto a custodial parent's desire to retain custody of the child.
686 So.2d at 641-42.
In this case, the Former Husband argued that the Gibbs standard does not apply, and instead that a "best interests" standard applicable to an original custody determination was appropriate. He presented two rationales for this argument: (1) that the original judgment established a rotating custody arrangement and that the burden to modify joint or rotating custody should be best interests; or (2) that the Former Wife somehow agreed to a lower burden of proof, either by agreeing to have a court-appointed psychologist consider and report upon the best interests of the children in the modification proceeding, or by signing a marital settlement agreement that failed to designate a primary residential parent. Under the facts of this case, we find no merit in these positions.
First, the parties' marital settlement agreement, as incorporated into the final judgment of dissolution, did not establish a joint or rotating custody arrangement. The provision on the custody of the children provided:
The children will reside with the Wife when not with the Husband. The children will reside with the Husband Tuesday and Friday nights during Wife's week and Tuesday night and from 6:00 p.m. on Fridays until 3:00 p.m. on Sundays during Husband's week. The parties agree to cooperate, in the children's best interests, in resolving conflicts and jointly celebrating birthdays, Halloween, Thanksgiving, Christmas, Easter, school holidays and other appropriate events. The children will reside with the Husband for two (2) weeks during each summer.
The agreement also required the Former Husband to pay child support.[1]
Although this agreement is ambiguous, at the modification trial each party provided parol evidence describing the arrangement as a "traditional" primary residence arrangement, wherein the Former Wife had primary residential care of the children and the Former Husband had every Tuesday evening and alternating weekends. Indeed, in the proceedings before the trial court, the Former Husband never argued that the marital settlement agreement provided for joint or rotating custody. In fact, the order granting the Former Husband's petition to modify the judgment stated: "The parenting schedule described in the parties' marital settlement agreement shall now be reversed." If the schedule described was a joint or rotating custody arrangement, this modification would be of no practical effect.[2]
*354 Second, we conclude the Former Wife did not agree to a lower burden of proof for this modification proceeding, either in her stipulation to allow the court-appointed psychologist to evaluate the best interests of the children or because she signed a marital settlement agreement that failed to specifically identify her as the "primary residential parent." With respect to the stipulation to appoint a psychologist, the stipulation did not address the burden of proof at trial. Instead, it simply required that the psychologist examine the best interests of the children by examining those factors set forth in section 61.13(3), Florida Statutes (2000). As discussed above, the Gibbs extraordinary burden test includes, in part, an examination of the "best interests" of the children based upon these factors. Therefore, the psychologist would be expected to report on this aspect of the test. There is nothing in the stipulation that could act as a knowing waiver of the higher burden of proof generally required in a modification proceeding. We conclude that a stipulation to allow a psychologist to address the best interest factors, without more, does not waive or lower the standard of proof in a modification of custody proceeding.
Similarly, the marital settlement agreement and final judgment did not address the burden of proof to obtain a modification in custody. See Cassin v. Cassin, 726 So.2d 399 (Fla. 2d DCA 1999) (addressing marital settlement agreement wherein parties agreed to review of parenting arrangement based upon best interests of children without substantial change in circumstances). The agreement in this case simply established a de facto primary residential parent without using those words. Assuming, without deciding, that the parties could agree to a lower burden of proof, they did not do so in this marital settlement agreement. When the parties establish a visitation schedule wherein one parent has the children for a majority of the time, and there is no language expressly addressing the burden of proof in a modification proceeding, that arrangement can only be modified when the petitioning parent meets the Gibbs standard.
After this court issued its original opinion in this matter, the Former Husband sought rehearing and clarification. In this motion, the Former Husband raised a third argument as to why the Gibbs standard did not apply in this case. Specifically, the Former Husband argued that pursuant to section 61.13(4)(c)(5), Florida Statutes (2000), the court could order a change in custody if it was in the best interests of the minor children because the Former Wife refused to honor his visitation rights without proper cause. See Steiner v. Romano-Steiner, 687 So.2d 21 (Fla. 5th DCA 1996); Williams v. Williams, 676 So.2d 493 (Fla. 5th DCA 1996). In Steiner and Williams, the Fifth District held that a noncustodial parent proceeding under section 61.13(4)(c)(5) need not prove a substantial change in circumstances to obtain a modification of custody, but must simply prove a violation of visitation rights has occurred and the best interests of the child support the change in custody.
We need not decide whether we agree with the Fifth District's decisions in Steiner and Williams, however, because we hold that section 61.13(4)(c)(5) does not apply to the present situation. There was no evidence that the Former Husband had ever been denied his scheduled in-person visits with the children. The only evidence that the Former Wife "refused to honor" the Former Husband's "visitation rights" involved telephone contact between the Former Husband and the children, which was ordered by the court in April 1999. The Former Wife was never held in contempt *355 on this issue or on any other visitation provisions.[3] Moreover, although the final order modifying the final judgment mentioned the Former Wife had "interfered with visitation," it made no finding that she had denied visitation or refused to honor such visitation without cause on any specific occasion. We conclude that in order to invoke the provisions of section 61.13(4)(c)(5), the noncustodial parent must prove and the court must find that the custodial parent willfully violated court-ordered visitation provisions on specific dates and times, such as would support a finding of contempt.[4]
After a thorough review of the record, we conclude that the Former Husband did not meet the extraordinary burden required to compel a court-ordered change in custody. Viewed in the light most favorable to the Former Husband, since the final judgment, the Former Wife had (1) verbally belittled him outside the presence of the children in at least four telephone conversations, even after the court-appointed psychologist stressed how important it was for the parents to work together, (2) failed to communicate to the Former Husband in advance of certain decisions regarding the children, and (3) failed on at least five occasions during the prior year to provide the Former Husband with the daily telephone contact with the children required by a court order.
The evidence most favorable to the Former Husband consisted of the content of four taped telephone conversations[5] between the Former Wife and Former Husband and the testimony of the court-appointed psychologist. In the taped telephone conversations, the Former Wife engaged in tirades against the Former Husband, swearing at him, calling him names, and otherwise denigrating him and his relationship with the children. Though these calls were highly inappropriate under any circumstances, they did not occur in the presence of the children.
The court-appointed psychologist initially filed a report slightly favoring the Former Wife as the primary residential parent. The report detailed the acrimonious relationship between the parents and their utter inability to put aside their differences to work in the best interests of the children. The report ascribed equal fault to the parents for this situation. At trial, the Former Husband suggested to the psychologist that the taped telephone conversations, made after the psychologist sent his report to both parties, should alter his *356 opinion because the psychologist had placed particular emphasis in his report on the importance of encouraging a relationship between the child and the other parent. When pressed on this issue, the psychologist testified:
In my report, I tried to point out Mr. Wyckoff'sthe kinds of attitudes and behaviors on his part that provoked a negative reaction on her part. And I tried to point out on her part the things that she was doing that I thought were not in the best interest of cooperative parenting. I think I did a good job of making it clear what the parents needed to do in order to be able to cooperate and share their children.
Now if the evidence is persuasive that she did not make enough of a good-faith effort, and he did, then I would suggest giving him a trial of being the primary residential parent and see if him being in charge will eliminate the visitation problem. Now, you knowbut I don't know enough about the most recent evidence to make that decision or to render an opinion there.
The psychologist did not testify that the current custody arrangement was detrimental to the children or that there was any significant inadequacy in the Former Wife's primary care of the children such that a change in custody would clearly promote or improve their well-being.
In addition, there was other uncontradicted testimony that weighed against a change in custody. The Former Wife had provided the primary care for the children since birth, and the children were doing well in school and appeared emotionally well-adjusted. Although one daughter had required some counseling because of the acrimonious relationship between the parents, that child had been doing well and no longer required any intervention. While the modification proceedings were pending, the Former Husband had moved to Key West but then decided to move back to the county where the Former Wife resided. He was actually in the process of relocating at the time of the final hearing and had not yet found employment or a place to live.
The evidence presented to the trial court was insufficient to meet the extraordinary burden necessary to justify judicial intervention in the custody arrangement initially agreed upon by the parties. See Newsom v. Newsom, 759 So.2d 718 (Fla. 2d DCA 2000); Chant v. Chant, 725 So.2d 445 (Fla. 2d DCA 1999); Blosser v. Blosser, 707 So.2d 778 (Fla. 2d DCA 1998). We therefore reverse the order modifying the final judgment by awarding primary residence to the Former Husband.
Because we reverse the modification of custody, the order terminating the Former Husband's support obligations and requiring the Former Wife to pay child support is also reversed. The Former Husband failed to prove a substantial change in circumstances warranting the reduction of his support obligations separate and apart from one required by a change in custody.[6] Our reversal therefore *357 has the effect of reinstating the obligations imposed by the final judgment of dissolution.[7]
Finally, the trial court abused its discretion in failing to award the Former Wife any of the attorney's fees she incurred in this modification proceeding. All or a portion of these fees should have been awarded based upon the respective financial positions of the parties.[8] Although the Former Husband was moving the week of the final hearing and was still seeking employment, he expected to find employment or open up his own law firm. Historically, and specifically during the pendency of these proceedings, he consistently made three or more times the income of the Former Wife. By the time the trial court had the hearing on child support, the Former Husband was employed as a city attorney making over $80,000 per year. Under these circumstances, the trial court abused its discretion in failing to award the Former Wife any contribution to her reasonable attorney's fees.
During these proceedings, the trial judge perceptively warned the parties that no judicially mandated custody arrangement was capable of solving the problem that posed the greatest risk to these children the parents' virtually unbridled animosity for each other. The psychologist and parenting coordinator also attempted to help the parents see this reality and change it. We repeat the trial judge's warning in the hopes that these otherwise capable, loving parents will begin to work together for the benefit of their children.
Reversed and remanded for proceedings consistent with this opinion.
FULMER and SILBERMAN, JJ., Concur.
NOTES
[1] The agreement was drafted either by the Former Husband, who is a practicing attorney, or by counsel retained on his behalf.
[2] Even if the parties had a joint custody arrangement, it is not clear that this would result in a lower burden of proof for modification. See Newsom v. Newsom, 759 So.2d 718 (Fla. 2d DCA 2000) (applying Gibbs v. Gibbs, 686 So.2d 639 (Fla. 2d DCA 1996), standard in petition to modify joint custody arrangement).
[3] The Former Husband filed a motion in June 1999 alleging he was denied telephone contact on six occasions, but this motion was apparently never resolved by the trial court. A parenting coordinator, appointed in September 1999, recalled only three to five times between September 1999 and the trial in June 2000 when this issue had been raised with him. The parenting coordinator, however, testified he did not view any of these missed calls as willful conduct on the part of the Former Wife.
[4] Because evidence and findings regarding the willfulness of any missed telephone contact was absent, we need not address whether a violation of telephone contact, alone, is sufficient to allow a change of custody under this provision. The Former Husband's argument, read broadly, would seem to permit a change in custody based upon best interests even in circumstances involving only one missed visitation. Because section 61.13(4)(c), Florida Statutes (2000), provides numerous remedies for noncompliance with visitation, it would seem that the most drastic of these would be employed only in circumstances where there had been substantial, willful non-compliance.
[5] The court had entered an order prior to trial allowing the parties to tape their telephone conversations. Although the Former Wife has argued that the tapes should not have been admitted into evidence, the record in this case does not support a reversal based upon this argument.
[6] We note that the Former Husband's petition for modification requested a reduction in his support obligations even if the trial court did not modify custody. However, the Former Husband did not present evidence justifying such a reduction in the absence of a change in custody. The final judgment required the Former Husband to pay $1500 per month in child support and a provision for "alimony" of $500 per month. At the modification hearing, both parties testified that this "alimony" was really intended to be child support and had been treated as such in tax filings. Based upon this consistent testimony, the trial court granted the Former Husband's request to reform the marital settlement agreement to coincide with the parties' intent. We affirm that aspect of the trial court's decision. Thus the final judgment required the Former Husband pay $2000 per month in child support. At the modification trial, the child support guideline calculation accepted by the trial court placed the Former Husband's portion of the child support obligation at $1913 per month. This deviation is less than the 15% that would provide a presumptive substantial change in circumstances warranting modification. See § 61.30(1)(b), Fla. Stat. (2000).
[7] On remand, the trial court may need to address the support required for the children during the pendency of this appeal while they have been in the primary residence of the Former Husband. As a result, we have considered the Former Wife's argument that the trial court erred in calculating the child support she would owe upon a change in custody. We find no abuse of discretion. The trial court may enforce that award for the time the children have been in the Former Husband's primary care.
[8] We do not find, nor did the parties argue, that any of the secondary factors listed in Rosen v. Rosen, 696 So.2d 697 (Fla.1997), apply to this case.