677 So.2d 1312 (1996)
Dane Robert HEATHERINGTON, Appellant,
v.
Roberta Lynn HEATHERINGTON, n/k/a Roberta Lynn Zemo, Appellee.
No. 95-03782.
District Court of Appeal of Florida, Second District.
July 31, 1996.
Michael E. Ciochina and Theodore D. Lorey, Clearwater, for Appellant.
No appearance by Appellee.
CAMPBELL, Acting Chief Judge.
Appellant father challenges the trial court order that modified a fourteen-year-old custody determination regarding the parties' sixteen-year-old daughter. The modification took primary residential custody away from the father and gave it to the appellee mother. The mother has not filed a brief. We reverse because we conclude that the mother did not carry her "extraordinary burden" of proving a substantial change of circumstances.
The current custody dispute began when the mother filed a petition to modify custody of the then-fifteen-year-old child. The child had lived with her father since she was eighteen months old due to a provision in the parties' joint stipulation and agreement giving the father the primary care, custody and control of the child. The joint stipulation and agreement had been incorporated into the final judgment of dissolution.
In order to effect a change in custody, the moving party carries the "`extraordinary burden' of proving a substantial change in circumstances such that [the child's] continued primary residence with [the residential parent] will be detrimental to [him/her] and that changing [his/her] primary residence to [his/her non-residential parent] is in [his/her] best interest." Kelly v. Kelly, 642 So.2d 800 (Fla. 2d DCA 1994). Moreover, the court's discretion to modify an existing *1313 custody arrangement is more limited than its initial determination. Hunter v. Hunter, 540 So.2d 235, 237 (Fla. 3d DCA 1989).
At the time the petition to modify custody was filed, the child had lived with the father nearly all of her life, with the mother exercising visitation as she could. During those fourteen years, the child lived with her father in Pinellas County; the mother lived in various locations and married and divorced three times. When the child was fourteen, the mother moved to Pinellas County, Florida, where the father and the child lived, and began exercising her visitation rights more frequently. Within six months of the mother's move to Pinellas County, the child expressed a preference to live with the mother instead of her father. It was that change in preference that spurred the mother's filing of the petition to modify custody. The mother's amended petition for a modification of custody alleged:
a. At the time of the Amended Final Judgment, Former Wife was in the military service, residing in the barracks, and could not provide accommodations for the minor child. The Former Wife now has the capability to provide accommodations for the minor child.
b. The minor child has expressed unhappiness when faced with returning to the father's home. The child desires to reside with her mother. The child no longer desires to reside with her father.
c. Since the entry of the Final Judgment, the father has not encouraged but rather discouraged and denied the mother's right to visitation.
d. Since the entry of the Final Judgment, the father frequently denigrates the mother in the presence of the minor child.
e. The mother can provide a loving and stable environment for the child.
f. Due to the age of the child and other reasons, the father is no longer able to meet the emotional needs of the child.
g. It is in the best interest of the minor child that primary residential care of said child be modified and the Petitioner/Mother should be appointed the primary residential parent.
The mother testified at the hearing on her petition that the child had expressed her desire to live with the mother, that the child seemed happier when the mother was around and that the child had no privacy at her father's home. The mother also expressed concern over the father's strict parenting style, from movie and clothing prohibitions to mandatory church attendance.
The father testified that once the mother moved to Pinellas County and began exercising more frequent visitation, the child's behavior, schoolwork and demeanor began to change. She went from being a child who never had a discipline problem to a child who had discipline problems at home, at school and at church. In addition, the child's grades dropped and her relationship with her father began to suffer.
It was also brought out during the hearing that when the child was fifteen, the mother sent the child and her girlfriend to the Bahamas for an unsupervised two-week vacation. During that two weeks, the father had difficulty reaching the child. Also during that summer, the mother bought the child a car against the father's wishes. Overall, the mother allowed the child to engage in activities that the father had prohibited and additionally caused the child to question her religious upbringing. It became apparent that the father had a stricter parenting style than the mother, perhaps due to religious differences between them.
In addition, during the fourteen years that the father had custody of the child, despite numerous legal maneuverings between the parties, the mother had never once requested a change in custody. Although she had requested, and obtained, reduced child support payments due to changed circumstances, once those circumstances returned to normal, she never increased the amount of child support that she paid.
Also during the hearing, the trial judge conducted a very thorough and thoughtful examination of the child, during which she commented that she might run away if forced to live with her father. The trial judge seemed quite concerned with this comment. The judge also conducted a thorough examination *1314 of both parents and expressed reservations about sending the child back to live with the father. The judge entered a temporary modification, changing custody from the father to the mother for two months, at which time the parties returned for a final determination. At the conclusion of that hearing, the judge made the change permanent and said:
It is the finding of the Court that it is in the best interest of Charity that she remain with her mother and I find that it's it would be detrimental for her to go back and reside at this time with Mr. Heatherington. I wish I could put my finger on exactly what the problem is and where it is.
It's a situation where she's spreading her wings and going through natural adolescence and trying to find herself. I don't know and I can't put my finger on it, by in my taking [sic] of her, she is in an emotional state that would not be good to send her back to stay with you.
However, despite the judge's finding and concerns, based on the allegations contained in the mother's petition and the evidence revealed at the hearing on the petition, we cannot conclude that the mother met her "extraordinary burden." None of the allegations contained in the mother's petition establish a change in circumstances sufficient to warrant a change in custody. In fact, although the mother states that she "now has the capability to provide accommodations for the minor child" due to her release from military service, the mother had moved into off-base housing in 1981 and was released from the military in 1982, twelve years before she petitioned for a change in custody.
Neither will the child's change in preference, by itself, mandate a custody change. See Schweinberg v. Click, 627 So.2d 548 (Fla. 5th DCA 1993); Elkins v. Vanden Bosch, 433 So.2d 1251 (Fla. 3d DCA 1983). Accordingly, support for the trial court's change in custody must be found elsewhere in the record. Although the trial judge expressed concern that the child may run away if custody were not changed, without more, we do not believe that this is sufficient to warrant a change in custody, particularly where, as here, it is the non-custodial parent's words and actions that have caused the undesirable changes in the child's behavior leading to the child's change in preference. We cannot condone this behavior on the part of either the parent or the child.
We have thus found no support for the change in custody, either in the petition requesting same or in the hearing on the petition. There has been no substantial change of circumstance indicating that continuing the child's custody with the father will be detrimental to the child or that changing custody to the mother would be in the child's best interest. Having thus found no support for the trial court's order, we reverse the modification of custody and direct that the child be returned to the custody of the father.
BLUE and QUINCE, JJ., concur.