686 So.2d 639 (1996)
Karie Lynn GIBBS, Appellant,
v.
Raymond Lemoyne GIBBS, Appellee.
No. 96-01231.
District Court of Appeal of Florida, Second District.
November 27, 1996.
Rehearing Denied January 13, 1997.
*640 John W. Hoft, Jr., Tampa, for Appellant.
Richard S. Pipkin, Sebring, for Appellee.
ALTENBERND, Acting Chief Judge.
Karie Lynn Gibbs appeals an order shifting primary residential custody of her eleven-year-old son to his father, Raymond Lemoyne Gibbs. We reverse because the father failed to meet the extraordinary burden necessary to support a postdissolution change of custody. Standing alone, the fact that a male infant grows into a young man and develops an interest in sports is not the type of extraordinary circumstance that authorizes a court to impose a change of custody upon a mother who received custody of the infant in the final judgment of dissolution.

I. THE FACTS IN THIS CASE
The parties were married for six years and have one son, who was born in October 1984. The 1987 final judgment of dissolution provided for shared parental responsibility with the mother being the custodial parent. The father received liberal visitation rights.
In May 1994, the father filed a petition for modification of the final judgment, seeking to become the custodial parent of his son. To his credit, the father did not allege unfounded *641 accusations against the mother. Instead, he affirmatively alleged: "The petitioner recognizes the great love and affection existing between the mother and minor child, and does not allege the mother to be `unfit.'" The father primarily claimed that, when the boy was an infant he needed to bond with his mother, and now that he is approaching puberty, he needs his father as a male role model. The child is bright and has progressed well in school under the custodial care of his mother, but now has expressed a desire to be with his father and to be active in sports.
The evidence at the modification hearing established that the father had remarried and the mother had developed a long-term relationship with another man, who is a Florida Highway Patrol trooper. Neither household was perfect in all respects, but both were more than adequate to care for this child. A psychologist who visited both homes testified that she did not see anything "particularly unhealthy" about either home, and did not expect that either parent would abuse or neglect the son in the future.
The trial court entered an order amending the final judgment to shift custody of the son to the father. The order states:
Since entry of the Final Judgment the Court finds, and the husband has shown by a preponderance of the evidence, that there has been a substantial and material change in circumstances; such that it is now in the best interest of the minor child that the primary residency be transferred from the mother to the father.... The minor child has matured, is now eleven years of age, and has consistently and repeatedly expressed a preference to reside with his father. In addition, the minor child shows an increased interest in the type of outdoor and sports activities in which the father engages.
We conclude that the mother is correct in her argument that the father did not establish the extraordinary burden necessary to compel a change of custody in this case. We take this opportunity to explain, however, that the mother has misread Grumney v. Haber, 641 So.2d 906 (Fla. 2d DCA 1994), and incorrectly believes that this district has established a new rule requiring the trial court to find conditions even more stringent than earlier descriptions of the "extraordinary burden" test.

II. THE TWO-PRONG EXTRAORDINARY BURDEN TEST
Over the years, Florida courts have used various phrases to explain the extraordinary burden test. Behind the rhetoric, however, are two consistent requirements. First, the party seeking to modify a custody decree must plead and establish that circumstances have substantially changed since the final judgment. This is required to overcome the legal doctrine of res judicata, and probably reflects a general belief that stability is good for children. Second, the petitioner must establish that the change has such an important impact on the child that the court is justified in imposing a change of custody in the "best interests" of the child. Although the "best interests" aspect of this test involves a consideration of the same general factors that are used to make an initial decision, the trial court must understand that the analysis in a modification proceeding is substantially different from when the initial child custody decision is made in the dissolution because the presumption in favor of the custodial parent in the modification proceeding can only be overcome by satisfying an extraordinary burden.
The following review of the cases describing the extraordinary burden test suggests a change of custody is appropriate when, after a review of all of the factors enumerated in section 61.13(3), Florida Statutes, the trial court finds that a change in custody will so clearly promote or improve the child's well-being to such an extent that any reasonable parent would understand that maintaining the status quo would be detrimental to the child's overall best interests. This test involves more than a decision that the petitioning parent's home would be "better" for the child, and requires a determination that there is some significant inadequacy in the care provided by the custodial parent. At this extraordinary level, the trial court *642 may veto a custodial parent's desire to retain custody of the child.
Even before the creation of chapter 61, the courts required a special showing to support a change of custody. For example, in Frazier v. Frazier, 109 Fla. 164, 168, 147 So. 464, 465-66 (1933), the supreme court stated that an initial custody determination should not be "materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree...." Thereafter, in Ritsi v. Ritsi, 160 So.2d 159 (Fla. 3d DCA), cert. denied, 166 So.2d 591 (Fla.1964), the court provided a good discussion of the problem and, citing to Frazier, described the second prong of the test as an "essential to the welfare" test:
The rule applied on a petition to modify a decree for custody is that while the welfare of the child or children is of paramount concern, a final decree awarding custody to one parent, being res judicata of the matters involved and known at the time of the decree, should not be modified to change the custody to the other parent except upon materially changed circumstances, or for material facts unknown to the court at time of decree, and then only when it is shown to be essential to the welfare of the child to so order.
* * *
A change of decreed custody is justified in such improved circumstances of the wife when coupled therewith there are circumstances relating to the present custody which are improper and harmful to the child or children so as to make it manifest that a change of custody is essential for their welfare.
160 So.2d at 163-64. See also Klein v. Klein, 204 So.2d 239 (Fla. 3d DCA 1967), cert. denied, 214 So.2d 622 (Fla.1968).
In Smith v. Smith, 212 So.2d 117, 118 (Fla. 2d DCA 1968), this court used the "promote welfare" requirement announced by the supreme court in Bennett v. Bennett, 73 So.2d 274, 278 (Fla.1954):
"And, even if we do determine that there has been a substantial change in conditions, we would be warranted in altering said decree only where it appears that the welfare of the children will be promoted thereby."
The following year, in Hutchins v. Hutchins, 220 So.2d 438 (Fla. 2d DCA), cert. denied, 229 So.2d 869 (Fla.1969), this court stated the test in terms of "detriment":
Such a rule requires, then, in modification of child custody cases, not only that the general welfare of the children will be served by a change of custody, but that it will be detrimental to the children if custody is not changed. Here, the circumstances of all the parties, including the children, had not materially changed to the detriment of the children; and the trial judge merely found that the best interest and welfare of the children would be served by a custodial change. Such a finding was insufficient to warrant modification.
220 So.2d at 439-40 (footnote omitted).
In Robinson v. Robinson, 333 So.2d 526 (Fla. 2d DCA 1976), this court described a "reduced discretion" test:
In order to legally modify custody, there must be a substantial change in circumstances since the time the original judgment was entered. A trial court does not have the same degree of discretion to modify the custody provisions of a judgment of dissolution as it does in determining custody at the time of the original judgment.
Id. at 527 (citing Frye v. Frye, 205 So.2d 310 (Fla. 4th DCA 1967)). The Robinson court then observed that there was no evidence that the mother was "unfit."
In Garvey v. Garvey, 383 So.2d 1172 (Fla. 2d DCA 1980), our court considered the custody change of a seven-year-old boy in circumstances similar to those in this case. We recognized that the trial court had less discretion in modifying the custody provisions of a final judgment than in making the original determination. Relying on Hutchins and Robinson, the court again explained the test in terms of "detriment":

*643 To justify modification, the court must find a substantial change in circumstances since the date of the original judgment and detriment to the children if custody is not changed.
Id. at 1173. As in Robinson, the court noted that there was no evidence that the mother was "unfit." The court also emphasized that the preference of a child, although a factor to be considered, should not control the disposition of custody.
In Stricklin v. Stricklin, 383 So.2d 1183 (Fla. 5th DCA 1980), the newly created Fifth District used somewhat different language than the earlier Second District cases and expressly rejected any requirement that the custodial parent be found "unfit":
To warrant modification of a custody award, there must be competent, substantial evidence that (1) there has been a substantial or material change in the condition of the parties and (2) the best welfare of the child will be promoted by the change in custody. The order changing custody need not include a finding that the prior custodial parent is unfit.
Id. at 1184 (citation omitted). The Stricklin test was followed in McGregor v. McGregor, 418 So.2d 1073 (Fla. 5th DCA 1982), in what appears to be the first case describing the test as requiring an "extraordinary burden."
In evaluating these earlier cases on the requirement of detriment, it is useful to remember that under the "tender years" doctrine, the mother received young children unless she was "unfit." See Powell v. Powell, 604 So.2d 30 (Fla. 2d DCA 1992). See also Hutchins, 220 So.2d at 440. It appears likely that the emphasis on fitness and the related requirement of detriment were influenced by this doctrine in the earlier cases that involved a change of custody from the mother. The legislature abolished the tender years doctrine in 1982. See ch. 82-96, Laws of Fla. At the same time, the legislature added a list of "best interest" factors to be considered in all custody proceedings and specified that sole parental responsibility should only be awarded if shared responsibility would be "detrimental." See § 61.13(2)(b), Fla. Stat. (1995). The courts then began to employ the statutory concept of "best interests" in modification proceedings and to develop specialized concepts of detriment for particular uses. See, e.g., Alderman v. Alderman, 484 So.2d 1385 (Fla. 1st DCA 1986) (detriment as test for shift of custody to third party); McIntyre v. McIntyre, 452 So.2d 14 (Fla. 1st DCA 1984) (discussing impact of statutory best interest factors); Regan v. Regan, 660 So.2d 1166 (Fla. 3d DCA 1995) (detriment for sole parental responsibility). See also Beagle v. Beagle, 678 So.2d 1271, 1276 (Fla.1996) (state constitution requires that statutory best interest test contain explicit requirement of detriment when imposing grandparent visitation rights in intact family).
After the enactment of the 1982 legislative amendment, the First District adopted the extraordinary burden test in Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984). Emphasizing that the changed conditions must occur after the entry of the final judgment, the Zediker court described the test by quoting earlier language from Stearns v. Szikney, 386 So.2d 592, 594 (Fla. 5th DCA 1980), and by returning to the "promote welfare" prong:
"Upon proof of a substantial change in circumstances, the moving party must show that the welfare of the child would be promoted by the changed custody."
444 So.2d at 1038 (emphasis added by the First District). In its discussion of promoting the best interests of the children, the Zediker court did not use the language of detriment or the tender years concept of "unfit." Nevertheless, there is no suggestion that the First District saw its test as conflicting with the earlier Second District analysis. See also Lamb v. Lamb, 533 So.2d 857 (Fla. 4th DCA 1988) (citing to Zediker and stating petitioner must prove substantial material change in circumstances occurred and change of custody would promote welfare of children), review denied, 542 So.2d 1333 (Fla. 1989).
In Jablon v. Jablon, 579 So.2d 902, 903 (Fla. 2d DCA 1991), this court relied on Stricklin in observing:

*644 As our sister courts have pointed out, there is an `extraordinary' burden on the movant to prove (1) that a substantial and material change of circumstances has occurred since the final judgment and (2) that a change in custody is in the child's best interest.
While this test makes no reference to "detriment," the opinion states: "It has been established for some time that absent proven detriment to the child, possible moral wrongdoing by a parent does not warrant a custodial change." Id. at 904.
In Eddy v. Napier, 558 So.2d 199, 201 (Fla. 2d DCA 1990), this court cited to Garvey and described the test as:
To justify modification the court must find a substantial change in circumstances detrimental to the child since the original judgment.
In Bryant v. Meredith, 610 So.2d 586, 587 (Fla. 2d DCA 1992), we used the "promoting best interests" terminology:
Modification of custody is proper only if there is competent, substantial evidence showing a substantial or material change in the circumstances of the parties since the entry of the original order and that the welfare of the children would be promoted by a modification of the custody provision.
The opinion noted that there was no evidence that a change in the mother's retirement status was "detrimental to the child." Id. at 588. See also Miller v. Miller, 671 So.2d 849 (Fla. 5th DCA 1996); Myers v. Myers, 673 So.2d 49 (Fla. 1st DCA 1995).
Most recently, in Grumney, relying on Eddy and Jablon, this court described the test in this manner:
The parent seeking the transfer bears the "extraordinary" burden to prove a change in circumstances so substantial that the child's continued presence in his current home will be detrimental to him, and that placing him with his other parent is in his best interests.
641 So.2d at 907. This test was repeated in Kelly v. Kelly, 642 So.2d 800 (Fla. 2d DCA 1994), review denied, 651 So.2d 1194 (Fla. 1995), and Heatherington v. Heatherington, 677 So.2d 1312 (Fla. 2d DCA 1996).
Finally, in Allan v. Allan, 666 So.2d 170 (Fla. 2d DCA 1995), this court considered an unusual case in which the trial court awarded custody to the mother in the final judgment but the parents voluntarily decided to change a child's residence to the non-custodial father almost immediately thereafter. A year later, the mother wished to have physical custody of the child, and the father attempted to modify the judgment to reflect the circumstances of the preceding year. The trial court returned the child to the mother, focusing on whether it would be "detrimental" to return the child to the parent who had legal, but not actual, custody. This court reversed, relying on the test described in Jablon and emphasizing that the father with actual custody was not required to prove that a return to the mother's residence would be detrimental. The author of Grumney, Judge Patterson, concurred in Allan and the opinion does not suggest that the panel intended to conflict with any prior case. Moreover, when courts have analyzed cases in terms of detriment to the child, the focus has been on whether it would be detrimental for the child to remain with the parent who has actual custody, not whether it would be detrimental to the child if actual custody were changed. See, e.g., Grumney, 641 So.2d at 907.
In reading these many tests, one is reminded of the childhood game of telephone in which a message is whispered from player to player, changing along the way with no intent by the parties to alter the message. We find a small conflict within the rhetoric of these cases, a residual influence of the "tender years" doctrine, and a gradual incorporation of the 1982 legislation, but we perceive no conflict among the rules or outcomes announced in these cases.
Whether one uses "promote welfare," "essential to welfare," "reduced discretion," or "detriment," the "best interests" prong of this extraordinary burden is difficult. The policies behind this strict test should be obvious. The judiciary cannot referee every difficult parental decision made by divorced *645 parents. Initially, a judge may be required to choose between the parents to establish the child's primary residence. After the court makes that decision, however, the parents must continue to fulfill their obligations to the child or children. Although it may be ideal to change the custodial parent for a particular child at some stage in his or her development, the best interests test is not intended to allow the court to micromanage a child's custody from the entry of the final judgment until the child becomes an adult. Even in cases of divorce, these decisions should usually be made by the parents in private. The court must trust that even divorced parents usually want what is best for their children and have far greater ability to assess the interests of the child than does a judge who intervenes in the decision-making process for only a few hours. The best interest prong of this test is intended to give the trial judge the power to override the rare decision of a custodial parent who is unable to understand that the best interests of the child would be substantially better served if the child were allowed to move to the other parent's home. While any decision to modify custody will at least imply that it would be detrimental for the child to stay with the custodial parent, we see no useful purpose in requiring the trial court to expressly employ this legal conclusion so long as the factual findings in the modification order or the content of the record demonstrate that the petitioner has met the extraordinary burden. See Bader v. Bader, 639 So.2d 122 (Fla. 2d DCA), review denied, 649 So.2d 232 (Fla. 1994).

III. APPLICATION OF THE RULE IN THIS CASE
No matter how the test is phrased, the father did not establish his extraordinary burden in this modification proceeding. The father basically alleged that his son was growing up. For better or worse, boys and girls eventually stop playing with their toys, and ask for the keys to the car. At different stages in their lives, boys and girls often find that a mother or father is the more significant or influential parent. It may be that common patterns in childhood development should sometimes cause divorced parents voluntarily to change the custodial parent of a child for a few months or even a few years. The child's normal growth, as the father has alleged in this case, however, is not the type of substantial change in circumstances that the law requires to modify an initial custody determination.
Additionally, the father did not establish a basis to override the mother's decision, as the custodial parent, under the best interests prong of the test. Both parties agree that the mother is responsibly raising their son, and that there is great affection between the mother and child. The record is clear that the son is benefitting from liberal visitations with his father. Although the son has expressed a desire to live with his father, there is no competent, substantial evidence that this desire, standing alone, supports a change in custody at this time. See Heatherington, 677 So.2d 1312; § 61.13(3)(i), Fla. Stat. (1995).
Reversed and remanded for entry of an order reinstating the mother as custodial parent.
FULMER, J., concurs.
WHATLEY, J., concurs in result only.