725 So.2d 445 (1999)
Linda C. CHANT, Appellant,
v.
David E. CHANT, Appellee.
No. 97-01760
District Court of Appeal of Florida, Second District.
February 5, 1999.
*446 M. Katherine Ramers of M. Katherine Ramers, P.A., Dunedin, for Appellant.
Robert E. Wiggins, Palm Harbor, for Appellee.
NORTHCUTT, Judge.
We reverse the postdissolution order transferring the primary residence of the parties' children to Mr. Chant, because he did not meet the extraordinary burden necessary to justify judicial intervention in the parties' dispute.
Linda and David Chant divorced in October 1993. The final judgment incorporated the parties' marital settlement agreement, which named Ms. Chant as the primary custodial parent of their two minor daughters. Mr. Chant remarried, and Ms. Chant was engaged to be married when, eighteen months later, Mr. Chant filed a petition for modification of the children's custody. Following a final hearing, by which time Ms. Chant had remarried, the circuit court granted Mr. Chant's petition based on the following findings of fact:
2) Since the time of the Final Judgment, there have been the following changes in circumstances in the lives of the parties:
a) Both parties have remarried;
b) The former Husband has remarried a person that appears to the children to be more emotionally available to them while the Former Wife has remarried to someone who the children feel is not;
c) Both sets of parents make sure that all the children's physical needs are well attended to but the Former Wife does not understand that the children's emotional needs are just as important as their physical needs.
3) Both sets of parents love the children and the children love both sets of parents very much.
4) Both children expressed a desire to live with the Former Husband and the Court finds that they are old enough to start making known their desire of where they want to live as long as it is a well thought out and reasonable decision.
5) The Former's Wife's remarriage has been detrimental to the children's emotional needs and the children are in a stressful environment and they just don't feel the warmth and nurturing that they need at this particular point in their lives.
6) The Former Wife is in need of counseling to understand the emotional needs of the children.
These findings variously were insufficient to justify a modification of custody, or were unsupported by the evidence in the record. That evidence demonstrated that both parents were loving and attentive. The children liked their stepmother more than their stepfather, and they described some friction in their mother's household based on what boiled down to petty differences. In addition, on some occasions Ms. Chant or her new husband had criticized Mr. Chant. These appeared to be isolated incidents, however. Otherwise, for the most part the two parents cooperated well. There had been one visitation dispute, involving a July 4th weekend, but Ms. Chant generally had been flexible about the visitation schedule when necessary to accommodate shift changes at Mr. Chant's job.
The evidence also disclosed that when the children first expressed their desire to live with their father, he advised them not to inform their mother. Rather, they were to *447 keep their wishes a secret while he investigated the possibility of a custody change. Ms. Chant first learned that her children desired to leave her home eight months later, when she was served with Mr. Chant's modification petition.
At the final hearing Mr. Chant presented the testimony of a clinical social worker he employed to evaluate the children's preference. The social worker opined that the children's desire to change their residence was genuine and well-founded. But she acknowledged that as of the final hearing date she had not seen either child in nearly a year. A custody investigator for the Sixth Judicial Circuit interviewed the children and the parties, and visited each home. Applying the statutory factors for determining the best interests of children set forth in section 61.13(3), Florida Statutes (1995), the investigator opined that Mr. Chant enjoyed an edge in three: as the parent most likely to allow frequent and continuing contact with the nonresidential parent, as the parent more likely to foster the children's relationship with the nonresidential parent, and as the children's choice to be residential parent.
Neither the social worker nor the custody investigator suggested that Ms. Chant did not understand the children's emotional needs or the importance of those needs. That suggestion was made by the trial judge who, when announcing her decision, opined that Ms. Chant "doesn't understand that really the wors[t] thing she can do is win this case because she needs to let these children go lovingly and voluntarily with their father or they're going to resent her forever. This Court can't make her understand that. She doesn't understand that and until she understands that she doesn't understand their emotional needs."
There is no question that, but for the children's preference, the circumstances disclosed in this record fall far short of those necessary to justify a court-ordered modification of primary residence. To be sure, the children and adults involved had encountered difficulties adjusting to their situations following the Chants' divorce. But those difficulties were rather common ones. And, although Mr. Chant apparently was better able to facilitate the children's transition, nothing suggested that the children could not make a healthy transition or would suffer harm if they continued to reside in their mother's home. See Blosser v. Blosser, 707 So.2d 778, 781 (Fla. 2d DCA 1998) (even where mother on occasion acted immaturely by making unfounded accusations of sexual abuse, sometimes frustrating father's visitation attempts, and giving birth to a second child when her economic situation was not at its best, change of residential custody was not justified); Gibbs v. Gibbs, 686 So.2d 639 (Fla. 2d DCA 1997).
In Gibbs, we noted that the party seeking a modification of child custody bears an extraordinary burden to prove that there has been a substantial change in circumstances and that a change of custody would be in the child's best interests. Based on our review of the relevant caselaw, we concluded that a change in custody is appropriate when the trial court finds that it would so clearly promote or improve the child's well-being to such an extent that any reasonable parent would understand that maintaining the status quo would be detrimental to the child's overall best interests. 686 So.2d at 641. "This test involves more than a decision that the petitioning parent's home would be `better' for the child, and requires a determination that there is some significant inadequacy in the care provided by the custodial parent." Id.
Here, the only alleged significant inadequacy in Ms. Chant's care of the children was her supposed failure to understand the children's emotional needs, as "evidenced" solely by the fact that she did not accede to the children's wish to change their residence-a wish that was not communicated to her until the modification petition was served. We reject the circuit court's reasoning in that regard, in that it placed Ms. Chant in the impossible position of damning herself simply by resisting Mr. Chant's modification petition.
Standing alone, a child's reasonable preference is not enough to justify a court-ordered change of residence. See Heatherington v. Heatherington, 677 So.2d 1312 (Fla. 2d DCA 1996). Here, Ms. Chant was parenting *448 her children well, albeit not perfectly. That the children perceived, perhaps reasonably, that Mr. Chant might do a better job of parenting them simply did not raise Mr. Chant's case to the extraordinary level required of him.
As did the trial judge, we believe that all parties to this dispute have acted sincerely. Certainly, both parents love their daughters, and that love is reciprocated. Just as certainly, these parents want to achieve the best possible situation for their children, but they reasonably disagree about what that is. In this respect, this dissolved family is no different than many intact ones in which parents disagree with each other or with their children regarding what is best for them. The main difference, of course, is that intact families do not have the courts available to resolve their disagreements.
For the most part, this is as it should be for dissolved families, as well. In Gibbs, we observed that the courts cannot referee every difficult parental decision made by divorced parents; even after a divorce, parents must continue to fulfill their obligations to their children.
Although it may be ideal to change the custodial parent for a particular child at some stage in his or her development, the best interests test is not intended to allow the court to micromanage a child's custody from the entry of the final judgment until the child becomes an adult. Even in cases of divorce, these decisions should usually be made by the parents in private. The court must trust that even divorced parents usually want what is best for their children and have far greater ability to assess the interests of the child than does a judge who intervenes in the decision-making process for only a few hours.
Gibbs, 686 So.2d at 645. Accordingly, in Gibbs we emphasized that judicial intervention in a parental dispute over their children's residence is warranted only if the petitioning parent can prove some significant inadequacy in the care provided by the custodial parent. The evidence in this case did not meet that threshold.
Reversed with directions to reinstate Ms. Linda Chant as the children's primary residential parent.
PATTERSON, A.C.J., and ALTENBERND, J., Concur.