862 So.2d 828 (2003)
Cheri Marie BURGER, n/k/a Cheri Marie Pedigo, Appellant,
v.
Joshua Caleb BURGER, Appellee.
No. 2D02-4944.
District Court of Appeal of Florida, Second District.
December 10, 2003.
Rehearing Denied January 30, 2004.
*829 Raymond J. Rafool, II, of Rafool & Rafool, P.A., Winter Haven, for Appellant.
William C. Hamm, Jr., Lakeland, for Appellee.
VILLANTI, Judge.
Cheri Marie Pedigo (the Mother) challenges the trial court's order transferring primary residential custody of her eight-year-old son to Joshua Caleb Burger (the Father). Because the Father failed to meet the "extraordinary burden" test for child custody modification set forth in Gibbs v. Gibbs, 686 So.2d 639, 641 (Fla. 2d DCA 1996), we reverse.
Shortly after the parties married on June 14, 1996, in Lakeland, Florida, they moved to Colorado where they briefly lived as husband and wife. Their son was born on October 10, 1996, and soon after his birth, the Mother and son returned to Lakeland, where both parties have extended family. The Mother and son moved in with the maternal grandmother, where they continued to reside, on and off, until the final order modifying custody was entered.
On March 31, 2000, the court entered its final judgment of dissolution of marriage, which designated the Mother as the primary residential parent and granted the Father reasonable and liberal visitation. The court also ordered the Father to pay $616 per month in child support. On May 7, 2001, the Father petitioned the court for a modification in child support based on a substantial decrease in his income. Before the court entered an order on this modification petition and following an impasse in mediation, the Father petitioned for modification of child custody on June 26, 2001. He also requested emergency relief to temporarily remove the son from the Mother's care.
As grounds for the petition for modification of custody and the emergency motion for temporary relief, the Father alleged, inter alia, that the Mother had failed to maintain a stable living environment by leaving the son with the maternal grandmother for "days on end" and by allowing the son to move from residence to residence; that the Mother had checked herself into a drug rehabilitation program for an ongoing drug abuse problem but left before completing the program; and that the Mother had been the victim of domestic violence in front of the son. Finally, he alleged the Mother's whereabouts were unknown at the time he submitted his petition because she had recently left the son at the maternal grandmother's home and disappeared. He submitted that all of these circumstances amounted to a substantial change in circumstances that resulted in detriment to the son and that it would be in the son's best interests to reside with the Father, who could provide a stable living environment because of his military career and remarriage.
After a hearing on the emergency motion at which both parties were present, the court entered a temporary order on July 10, 2001, denying the Father's requested relief but awarding temporary custody of the son to the maternal grandmother, who was not a party but who was present and agreed to this arrangement.[1] *830 In its order, the court found that the son had resided with the maternal grandmother for the last three-and-one-half years in a stable environment in which he was well cared for. Notably, the court specifically determined that in fact no emergency existed as to the care and custody of the son. Nevertheless, apparently in view of the Mother's ongoing drug problem, the court ordered that the Mother was allowed only supervised visitation.
On May 17, 2002, the Mother moved to be allowed unsupervised visitation with the son. Her motion alleged that she had completed counseling and had established a stable living environment. At the hearing on this motion, the maternal grandmother testified that she was certain the Mother had stopped using drugs. On the court's recommendation, the Mother submitted to a drug test that same day after the hearing concluded. When the test revealed the presence of amphetamines, the court denied the Mother's motion for unsupervised visitation.
The hearing on the Father's petition to modify custody was held on September 24, 2002. At this hearing, the testimony revealed that the Mother, the son, and the Mother's daughter from a different relationship all resided with the maternal grandmother.[2] The Mother testified about her extensive involvement in the son's school, where he was continuing to excel academically. She also testified that the son enjoyed a close relationship with his half-sister and described the activities she and the children enjoyed together as a family, such as playing in the yard together, reading stories together, and going on outings to family restaurants. In contrast, the Father's visitation was limited by geography and the terms of the final judgment of dissolution of marriage, which allowed visitation on major holidays during alternating years and for six weeks during the summer.
The Mother also testified that at the time of the hearing, she was receiving treatment for methamphetamine abuse. In addition to completing treatment, she was working part time as a waitress while also a full-time student pursuing a degree in radiology. Two counselors from the Mother's treatment program testified that she was "an inspiration" in her progress toward full success and that she was totally committed to a complete recovery. They also indicated that since the Mother began treatment, she had passed every random urinalysis. The counselors thus maintained that the Mother's prognosis for recovery was good as long as she continued *831 in the program, which the Mother indicated she planned to do.
The Mother's success with drug treatment was further supported by the maternal grandmother's testimony. On cross-examination, however, counsel for the Father impeached the maternal grandmother based on her similar testimony at the May 17, 2002, hearing, after which the Mother tested positive for amphetamines. Thus, the trial court treated the maternal grandmother's testimony with skepticism.
Regarding the allegations of domestic violence, the maternal grandmother testified to three such incidents. The maternal grandmother actually observed only one incident, which was a fight between the Mother and the Mother's sister in 1997 that resulted in the maternal grandmother physically removing the Mother from the house. The other two incidents did not take place in front of the maternal grandmother, and thus she testified based on hearsay reports from the Mother and the Mother's sister. One incident involved a male spitting in the Mother's face and perhaps slapping her; in the other, the Mother was attacked. Contrary to the Father's allegations, none of these incidents occurred in front of the son. No evidence was presented regarding any of the Father's other assertions in his modification petition.
At the conclusion of the hearing, the trial court granted the Father's petition for modification of custody. As grounds for its ruling, the court made the following findings germane to our analysis:
6. That the mother has had financial instability. That the mother is not financially capable of caring for herself and her children at this time. That the mother constantly changes residences. That the mother has had a second child out of wedlock. However, these factors are insufficient in and of themselves.
7. That when adding the above factors to the mother's undisputed history of drug abuse that has occurred at least over the last two-year period combined with the mother's history of domestic violence when she is using drugs, that it is so substantial that the child's continued presence in his current placement will be detrimental to him and that placing him with his father is clearly in his best interests.
(Emphasis added.)
The court correctly noted that the Mother's financial instability, frequent residence changes, relationships with men, and birth of a child out of wedlock were not sufficient grounds to justify a custody modification. This determination was based on well-settled law, and the court cited Grumney v. Haber, 641 So.2d 906 (Fla. 2d DCA 1994). See also Blosser v. Blosser, 707 So.2d 778 (Fla. 2d DCA 1998) (fact that financial circumstances had worsened for mother, requiring her to move in with friend, not substantial change in circumstances to warrant custody change absent showing of harm to child); Kelly v. Kelly, 642 So.2d 800 (Fla. 2d DCA 1994) (evidence that mother had moved five times and was involved in verbally abusive and threatening relationship and that daughter was not as well adjusted as she had been insufficient to warrant custody modification without showing that daughter's needs were unmet).
Despite correctly noting the above factors were not sufficient to modify custody, the court went on to conclude that the Mother's drug abuse and domestic violence issues justified a change in custody. This was error because it departed from the analysis required by Gibbs, 686 So.2d 639, in postdissolution custody modification *832 proceedings. In Gibbs, we established a two-prong test for determining whether primary custody can be changed. The party requesting the modification must show first that there has been a substantial change in circumstances and, second, that these changed circumstances have resulted in such a detriment to the child that a modification would be in the best interests of the child. Id. at 641-43. Significantly, a custody modification will not be justified by a mere showing that the child will be "better off"; instead, it must be clear "that any reasonable parent would understand that maintaining the status quo would be detrimental to the child's overall best interests." Id. at 641; accord Perez v. Perez, 767 So.2d 513 (Fla. 3d DCA 2000). Hence, the burden on the party seeking modification has been aptly named an "extraordinary burden." See Gibbs, 686 So.2d at 641.
Here, there was insufficient evidence to pass either prong of the Gibbs test. First, the circumstances had not substantially changed since the dissolution of marriage. At the time of the dissolution of marriage, the Mother and the son were residing with the maternal grandmother; the same was true at the hearing to modify custody. The Mother's interim residential changes did not disrupt the son's environment, as reflected by the trial court's order denying the Father's emergency motion. The only indication of changed circumstances relating to the Mother's financial stability is a positive change: namely, that she has been working and pursuing a college degree. We note that, by definition, a change of circumstances to warrant custody modification involves a change for the worse; a change for the better, or no change at all, generally could not support a custody change.
Regarding her drug abuse, the testimony established that the Mother had been using drugs, on and off, since at least 1997, well before the 2000 dissolution of marriage. Although her drug abuse is far from commendable, ironically, the only evidence of a substantial change in circumstances is the positive change the Mother has made by receiving treatment, the success of which was noted by four witnesses. Even if the trial court rejected sub silentio all of the evidence of the Mother's finally achieving success in her rehabilitation efforts, this would only prove that the prior status of her drug addiction had not changed.
The Father also contends that the three incidents of domestic violence to which the maternal grandmother testified support a finding of substantially changed circumstances. We have two problems with this contention. First, the only incident the maternal grandmother actually witnessed occurred in 1997, well before the final judgment of dissolution of marriage awarded the Mother custody. And more significant, no instance of abuse took place in front of the son.
Finally, there was no testimony relating to any of the other allegations of changed circumstances the Father raised in his petition. Thus, there was no evidence to support some of the allegations, and the evidence that was adduced to support the other allegations does not satisfy the first prong of Gibbs. In sum, there was no competent, substantial evidence to support a finding of a substantial change in circumstances.
Second, even if a substantial change in circumstances had been shown, the best interests of the child are not clearly served by a custody change because there is no showing of an ascertainable detriment to the child. "For the trial court to consider a parent's conduct on the issue of custody, the evidence must show a direct impact on the child. The possibility *833 of a negative impact is not sufficient." Willis v. Willis, 818 So.2d 530, 533 (Fla. 2d DCA 2002) (citing Jacoby v. Jacoby, 763 So.2d 410 (Fla. 2d DCA 2000)). Moreover, "[t]he connection between the conduct and the harm to the child[ ] must have an evidentiary basis; it cannot be assumed." Jacoby, 763 So.2d at 413.
Here, the trial court did not find that the son was suffering any detriment, nor was any proof presented to suggest such a conclusion. Rather, the trial court found only that the son's continuing in his current custody arrangement "will be detrimental to him." This was error. The court assumed, without evidence to support its assumption, that the son's continuing to reside with the Mother would be detrimental to him. However, the trial court failed to reference any ascertainable indication that the son is suffering any harm as required by Jacoby and its progeny. Moreover, the evidence does not show "that a change in custody will so clearly promote or improve the child's well-being to such an extent that any reasonable parent would understand that maintaining the status quo would be detrimental to the child's overall best interests." Gibbs, 686 So.2d at 641. To the contrary, the evidence clearly demonstrated that despite any financial or personal hardships the Mother may have suffered, this child was thriving. He is performing extremely well in school, enjoys normal activities for a child his age, is close to his half-sister, and appears to be surrounded by love. It is unclear to us from what evidence the trial court was able to glean any suggestion of detriment other than from its own assumptions.
Because the Father failed to satisfy Gibbs' two-prong extraordinary burden test, the trial court abused its discretion in granting the Father's petition to modify custody. As such, we reverse the order modifying custody and the temporary order awarding custody to the maternal grandmother and requiring the Mother to have supervised visitation. See Jackson v. Jackson, 468 So.2d 1098, 1099 (Fla. 2d DCA 1985) ("We know of no basis upon which the order granting temporary custody of the children to the husband could survive the final order denying the husband's petition for modification.").
Because we reverse, we decline to consider the other issue raised on appeal, i.e., whether the trial court properly considered the relocation factors of section 61.13(2)(d), Florida Statutes (2002), when it determined the child should move with the Father to California. We remand to the trial court to enter an order vacating the order granting the Father's petition to modify custody and reaffirming the Mother's custody as established in the final judgment of dissolution of marriage.
Reversed and remanded.
CANADY, J., and SEXTON, SUSAN, Associate Judge, concur.
NOTES
[1] What transpired at this hearing is unclear to us because the parties did not provide a transcript of the hearing. We note, however, that by its written order the trial court awarded temporary custody to the grandmother pursuant to section 61.13(7), Florida Statutes (2001), which provides:

(7) In any case where the child is actually residing with a grandparent in a stable relationship, whether the court has awarded custody to the grandparent or not, the court may recognize the grandparents as having the same standing as parents for evaluating what custody arrangements are in the best interest of the child.
After the trial court granted the grandmother custody, she filed a petition to intervene in the custody litigation and be awarded permanent custody pursuant to section 61.13(7). The Father moved to dismiss the grandmother's petition, relying on Richardson v. Richardson, 766 So.2d 1036 (Fla.2000), in which the Florida Supreme Court determined section 61.13(7) was an unconstitutional violation of a parent's fundamental right to raise his or her child. Subsequently, the grandmother voluntarily dismissed her petition. Apparently, however, the emergency order granting the grandmother temporary custody was never vacated until the final order modifying custody was entered.
[2] The issue of whether this living arrangement constituted a violation of the trial court's restriction on the Mother's visitation was not pursued.