875 So.2d 772 (2004)
Marlene HASTINGS, Appellant,
v.
John Steen RIGSBEE, Appellee.
No. 2D03-3547.
District Court of Appeal of Florida, Second District.
June 23, 2004.
*773 Robert L. Donald of Law Office of Robert L. Donald, and William T. Haverfield of Pavese, Haverfield, Dalton, Harrison & Jensen, L.L.P., Fort Myers, for Appellant.
Cary Alan Cliff of Faerber Lanier Deifik Cliff & Ross, P.A., Naples, for Appellee.
CANADY, Judge.
Marlene Hastings appeals an order of the trial court that modified the custody and visitation arrangements for her three-year-old child. The trial court's order was based on the recommendations of a parenting coordinator. Because the trial court abused its discretion by entering this order, we reverse.

*774 I. BACKGROUND
The order on appeal was entered as part of a paternity action that Mrs. Hastings initiated in February of 2001. In December of 2001, the parties reached a settlement agreement in which the respondent, John Steen Rigsbee, admitted paternity. The settlement agreement also made Mrs. Hastings the primary residential parent and set forth a visitation schedule for Mr. Rigsbee. A final order of paternity was entered that adopted and incorporated the settlement agreement. Mr. Rigsbee also separately agreed to pay $500 per month in child support to Mrs. Hastings.
In April of 2001, prior to the settlement agreement, the parties were having difficulty agreeing to matters related to their minor child. These difficulties resulted in a heated argument between the two parties in this case. As a result of this dispute, the trial court entered an order appointing Justine Healan as "parenting coordinator."
Although the initial appointment of the parenting coordinator was not objected to by either party, Mrs. Hastings subsequently developed a strained relationship with the coordinator. In August of 2001, Mrs. Hastings filed a motion to change the parenting coordinator, alleging that a "conflict of interest" had arisen between herself and the coordinator. This motion was denied. In August of 2002, Mrs. Hastings filed another motion seeking the removal of the parenting coordinator, alleging that the parenting coordinator was "openly hostile towards [Mrs. Hastings], [had made] unreasonable financial demands upon her, and [had] lost her objectivity and neutrality." This motion was also denied.
The events that led to the order on appeal occurred in May of 2003. Mrs. Hastings filed an emergency motion after Mr. Rigsbee refused to return the parties' child following a visitation. In response, Mr. Rigsbee filed a motion for temporary suspension of mother's parenting schedule. This motion alleged that Mrs. Hastings had been the victim of domestic violence by her present husband on March 10, 2003, and alleged that one of Mrs. Hastings' older children had been abused during the incident. The motion also stated that Mr. Rigsbee felt that he had been forced to withhold custody of the child because Mrs. Hastings had not provided proof that "the issues of domestic violence in her home had been resolved." The motion also noted that Mrs. Hastings had failed to respond to communications by the parenting coordinator about the incident while Mr. Rigsbee had been very cooperative with the coordinator.
Prior to the hearing on the motions, the parenting coordinator prepared a report on the domestic violence incident in the form of a letter addressed to the trial court. This report purported to reflect the content of the parenting coordinator's interviews of a number of people and also included the parenting coordinator's opinions regarding certain interviewees' honesty. The report suggested that Mrs. Hastings' husband, while intoxicated, engaged in disruptive behavior at a neighbor's house. It alleged that he threw furniture around in a pool area at a neighbor's house, let the air out of the tires of Mrs. Hastings' vehicle, broke one of the windows of the vehicle, and had a physical struggle with Mrs. Hastings' adult-sized minor son (not the child at issue in this case) inside a neighbor's house. The report stated that Mrs. Hastings' husband was arrested for physically attacking Mrs. Hastings' son. The report did not allege any significant injury to any person as a result of the incident.
The report also suggested that the domestic violence on March 10, 2003, was not an isolated incident, noting that the police *775 were called to the residence on March 1, 2003, as well. The report, however, provided few details of the earlier alleged occurrence of domestic violence and did not allege that any arrests resulted from that call. The parenting coordinator claimed in the report that Mrs. Hastings had not cooperated with her investigation of that incident, making it difficult for the parenting coordinator to determine what happened.
The report reached a number of conclusions. It stated that the risk of domestic violence posed a serious threat to the safety of the three-year-old child and faulted Mrs. Hastings (and her neighbors) for minimizing the importance of the March 10, 2003, incident. It also effectively concluded that Mrs. Hastings' contention that the March 10, 2003, incident was the first time that Mr. Hastings had demonstrated violent behavior was not credible. Additionally, notwithstanding the fact that there was no evidence that Mrs. Hastings had been struck by Mr. Hastings, the report criticized Mrs. Hastings for denying that she was a victim of domestic violence, stating that "everyone in the home" was victimized by the March 10, 2003, incident.
At the end of the report, the parenting coordinator provided a numbered list of six recommendations. The most significant recommendations are these:
1. Mrs. Hastings [should be required to] sign a release authorizing this coordinator to have full access to the results of her psychological testing that was performed in January 2003. If Mrs. Hastings does not sign a release[,] the court should order this report be release[d] to the parenting coordinator or the court. However, if the above recommendations are not viable then it is the recommendation of this coordinator that Mrs. Hastings be ordered by the court to have a complete psychological evaluation by Dr. Mary Ellen Frazier and the report be release[d] to this coordinator and the court. Mrs. Hastings shall undergo any further recommendations that are appropriate after the results of the psychological testing becomes available.
....
3. Mrs. Hastings shall seek and participate in appropriate counseling with a licensed mental health professionals [sic] who is trained in domestic violence and child protection. Mrs. Hastings shall sign releases so that this coordinator can monitor her counseling....
4. If Mr. and Mrs. Hastings continue with their relationship[,] Mr. Hastings shall participate in appropriate domestic violence counseling from a licensed mental health provider. Mr. Hastings shall follow all the recommendations of his counselors. Mr. Hastings shall also sign a release of information so that this coordinator may communicate with his counselors....
....
6. [I]t is this coordinator['s] recommendation that Mrs. Hastings have structured time with Jesse in order to reduce the risk of Mr. Hastings being present. This is designed to reduce the risk Jesse will be exposed to violence. However, this coordinator and [another parenting coordinator for Mrs. Hastings' other children] are under the opinion that a one hour a week supervised visit at a facility is not ideal for this family. Therefore, this coordinator has developed a plan that would allow Mrs. Hastings to have time with Jesse in her home while monitoring the risk of Mr. Hasting[']s being present. This plan will require the involvement and cooperation of Mr. Rigsbee, Mr. and Mrs. Hastings. Mr. and Mrs. Hastings must have a home where the telephone number is listed and no call forwarding is *776 present on the telephone. I propose that Mrs. Hastings have structure[d] time with Jesse at her home from 9:00 a.m. until 6:00 p.m. on Tuesday, Thursday, and alternating Saturdays and Sundays. (Mrs. Hastings stated she does not work on Tuesday or Thursday.) Mr. Rigsbee shall be responsible to provide all the transportation. Mr. and Mrs. Hastings shall call this coordinator every hour on the hour from the telephone without call forwarding. They shall not block the telephone number from appearing on this coordinator[']s caller ID. If this coordinator does not answer the telephone[,] they shall leave a brief message on this coordinator[']s voice mail as to their present location. This will provide a record that both parents are at separate locations every hour. Additionally, Mr. and Mrs. Hastings agree that this coordinator or her office manager, Jill Stulak, may telephone or appear at the residences for random checks. In order for this plan to be executed[,] Mr. Rigsbee [and] Mr. and Mrs. Hastings shall need to sign an agreement with this coordinator[']s office. Mrs. Hastings must meet her previously [sic] financial responsibilities with this office and maintain a retainer every month. Additionally, if the agreements and or the court orders are not upheld this coordinator shall be able to immediately discontinue Jesse['s] structured time in Mrs. Hastings['] home. Further, this monitoring and the restrictions shall be revised as Mr. and Mrs. Hastings['] progress in counseling and the risk to violence is reduced.
On June 4, 2003, two days after the date the report was prepared, the trial court held a hearing on the parties' motions. Mrs. Hastings, Mrs. Healan, and Mr. Nichols (a prior husband of Mrs. Hastings) were called to testify.
Mrs. Hastings' testimony was quite brief. She testified that there had been a physical struggle between her husband and her son. She was not asked about and did not explain the details of the incident. However, she acknowledged that her husband had been arrested and that he had been ordered not to contact her. She stated that she believed that there was no risk of harm to her three-year-old son if she regained custody of him. She also testified that she could not afford the supervised visitations and psychological evaluations proposed by the parenting coordinator. On cross-examination, she admitted that she was seeking to have the order against her husband lifted so that he could return to her home.
Mrs. Healan, the parenting coordinator, gave extensive testimony at the hearing. She testified that her report was the result of a request that she investigate the facts surrounding the motions that were being heard. Her testimony as to the March 10, 2003, incident largely mirrored that provided in the report. She did not claim to have any personal knowledge as to the incident, and Mrs. Hastings' attorney objected that her testimony was being used as a conduit for hearsay. On cross-examination, the parenting coordinator admitted that she had originally refused to speak with Mrs. Hastings until unpaid bills were brought current and also admitted that she would be unwilling to supervise visitation until she was paid. She stated that she was not familiar with Mrs. Hastings' financial circumstances.
Mr. Nichols testified that he was concerned about the presence of his children in Mrs. Hastings' home based upon what he had heard at the hearing. Otherwise, the purpose of his testimony was unclear. He did not claim any significant personal knowledge as to any relevant event.
*777 The trial court did not make any significant findings or pronouncements at the hearing. Following the hearing, the trial court entered a written order characterizing the parenting coordinator's recommendations as "a reasonable temporary solution." The order further stated that Mrs. Hastings' "parenting time" would be "temporarily modified to the schedule and conditions contained in" the recommendations in the parenting coordinator's report. The order also "cancelled" Mr. Rigsbee's child support obligation to Mrs. Hastings and ordered that the $500 per month be paid towards the balance that Mrs. Hastings owed the parenting coordinator. The order further stated that "Mrs. Hastings may have the matter reviewed in sixty days, if she is participating in counseling (the [c]ourt recommends ACT), has made some reasonable payment on [the parenting coordinator's] bill, and has otherwise cooperated with the [p]arenting [c]oordinator." This appeal followed.

II. ANALYSIS
As the foregoing background shows, the issues in this case arise from the trial court's appointment of a parenting coordinator, the subsequent performance of the parenting coordinator, and the trial court's adoption of recommendations made by the parenting coordinator. We recognize that it is the practice of some trial courts to appoint parenting coordinators. We also recognize that section 61.20, Florida Statutes (2003), authorizes a trial court to order a "social study and investigation" in cases where child custody is in issue and that Florida Family Law Rule of Procedure 12.363 authorizes a trial court to appoint a mental health professional or other expert to conduct a home study investigation when visitation or residential placement of a child is in controversy. In the instant case, however, there is no indication that the parenting coordinator was appointed pursuant to either section 61.20 or rule 12.363.
Although there may be circumstances in which a parenting coordinator can appropriately assist a trial court in carrying out the court's responsibilities, it is never appropriate for a parenting coordinator to act as a fact-finder or otherwise perform judicial functions. The overarching problem in this case is that the trial court effectively delegated its judicial authority to the parenting coordinator. Ultimately, the trial court permitted the parenting coordinator to act as the finder of fact and effectively subordinated the rights of Mrs. Hastings as a parent to the parenting coordinator's claims for the payment of her fees.

Financial Conditions
A parent's visitation rights may not be conditioned on the payment of the parent's financial obligations, including the payment of child support. See Waugh v. Waugh, 679 So.2d 1, 3 (Fla. 2d DCA 1996) (holding that conditioning the husband's visitation rights upon his payment of child support was improper); see also § 61.13(4)(a), Fla. Stat. (2003) ("When a noncustodial parent who is ordered to pay child support or alimony and who is awarded visitation rights fails to pay child support or alimony, the custodial parent shall not refuse to honor the noncustodial parent's visitation rights."). Notwithstanding this well-established law, the trial court required Mrs. Hastings, prior to obtaining visitation with the child, to "meet her previously [sic] financial responsibilities with [the parenting coordinator] and maintain a retainer every month." The financial obligation of Mrs. Hastings to the parenting coordinator is enforced by the parenting coordinator's right to "immediately discontinue [the child's] structured time in [Mrs. Hasting's] home" in the event of nonpayment. Although the trial court suggested *778 that it would consider reviewing its order in sixty days, it conditioned that review on Mrs. Hastings' making "reasonable payment" to the parenting coordinator. It was an abuse of discretion for the trial court to condition the exercise of Mrs. Hastings' custody rights on the payment of funds to the parenting coordinator.[1]

Hearsay Testimony
The primary evidence relied upon by the trial court at the motion hearing was the report and testimony of the parenting coordinator. Because the parenting coordinator's report and testimony were almost entirely hearsay, we conclude that this was error. Although expert witnesses are permitted to rely on hearsay evidence, such witnesses may not serve as a conduit for presenting that inadmissible evidence to the finder of fact. See, e.g., State v. DuPont, 659 So.2d 405 (Fla. 2d DCA 1995). In this case, the parenting coordinator set forth a summation of "facts" based upon her interviews with various individuals. She was the only source of detailed testimony as to the events of March 10, 2003, and admitted that her testimony reflected her assessment of the credibility of the various people she interviewed. This is exactly the type of testimony that Dupont and other cases like it seek to prevent.[2]

Standard for Change of Custody
A party seeking modification of a final judgment awarding custody is required to meet an extraordinary burden a much higher standard than would be required to obtain custody prior to final judgment. Gibbs v. Gibbs, 686 So.2d 639, 641 (Fla. 2d DCA 1996) ("The analysis in a modification proceeding is substantially different from when the initial child custody decision is made in the dissolution because the presumption in favor of the custodial parent in the modification proceeding can only be overcome by satisfying an extraordinary burden."). There are two elements of the extraordinary burden test. First, the party seeking modification must "establish that circumstances have substantially changed since the final judgment." Id. Second, it must be shown that "a change in custody will so clearly promote or improve the child's well being ... that any reasonable parent would understand that maintaining the status quo would be detrimental to the child's overall best interests." Id. The extraordinary burden test applies whether the requested change of custody is temporary *779 or permanent. Glover v. Glover, 820 So.2d 324, 325 (Fla. 5th DCA 2001).
In this case, there is no indication that the trial court even considered the order to be a change of custodial parent, much less applied the extraordinary burden test. Mr. Rigsbee's motion requested a temporary suspension of Mrs. Hastings' "parenting schedule." The trial court's order referred to this change as a "temporary suspension" of Mrs. Hastings' "parenting time." A modification of visitation rights is not subject to the extraordinary burden test. See Barrett v. Barrett, 862 So.2d 100, 101 (Fla. 2d DCA 2003). We conclude that this order, however, effected not a modification of visitation but a change in custody because it only permitted Mrs. Hastings, who previously had primary custody of the child, to have visitation with her child during the day for an average of three days a week. As a result of the order, Mr. Rigsbee functionally became the primary custodial parent. The trial court failed to apply the extraordinary burden test and thereby abused its discretion.

Psychological Records and Testing
The trial court's order adopting the conditions set forth in the parenting coordinator's report requires that Mrs. Hastings "sign a release authorizing [the parenting] coordinator to have full access to the results of her psychological testing that was performed in January 2003," or, in the alternative, "have a complete psychological evaluation by Dr. Mary Ellen Frazier and [have] the report ... release[d] to [the parenting] coordinator and the court." The trial court erred in ordering compliance with these alternative requirements. There was not an adequate basis either for concluding that the psychotherapist-patient privilege under section 90.503 was waived or for compelling Mrs. Hastings to submit to a psychological evaluation.
In an action seeking custody, existing mental health records maintain their privileged status unless a sufficiently "calamitous event[ ]" (such as a recent commitment to a mental institution or a suicide attempt) puts the records "at issue" in the proceeding. Attorney ad Litem for D.K. v. Parents of D.K., 780 So.2d 301, 309 (Fla. 4th DCA 2001); see also McIntyre v. McIntyre, 404 So.2d 208 (Fla. 2d DCA 1981). Further, an independent psychological evaluation may only be required in limited circumstances. Id. at 209. "[B]efore any party may be ordered to undergo physical or psychological examination, the [party's] condition must be `in controversy' and ... `good cause' for the examination must be shown." Williams v. Williams, 550 So.2d 166, 167 (Fla. 2d DCA 1989); see Fla. R. Civ. P. 1.360; see also A.D. v. Dep't of Children & Family Servs., 870 So.2d 235, 237 (Fla. 2d DCA 2004).
In this case, the allegation that led to the change in custody was an accusation that Mr. Hastings had acted violently towards an adult-sized minor and had damaged some property. No misconduct or odd behavior was alleged on the part of Mrs. Hastings. There was no showing of any calamitous event that would justify waiver of the psychotherapist-patient privilege. There was no showing that Mrs. Hastings' mental health was in controversy at all, and thus no good cause was established for requiring a psychological examination of Mrs. Hastings.

Requirements Imposed on Mrs. Hastings' Present Spouse
The trial court adopted the parenting coordinator's recommendation that Mr. Hastings be ordered to undergo counseling and "follow all the recommendations of his counselors." Mr. Hastings, *780 however, was not a party to the case, and consequently the trial court did not have jurisdiction over his activities. Silvers v. Silvers, 504 So.2d 30, 31 (Fla. 2d DCA 1987) (holding that "the trial court had no jurisdiction to order ... spouses [who were not parties to a dissolution case] to attend classes and counseling").

III. CONCLUSION
We vacate the trial court's order modifying custody of the parties' child and remand for further proceedings consistent with this opinion.
Reversed and remanded.
STRINGER and SILBERMAN, JJ., Concur.
NOTES
[1] We also note that the financial demands of the parenting coordinator ($125 per hour) did not fit within the means of the mother, who has an income of approximately $1000 per month. Not surprisingly, given her relatively small disposable income, Mrs. Hastings accrued over time an overdue balance of more than $4000 for the parenting coordinator's services. The impact of the cost associated with the use of a parenting coordinator should be carefully considered by the trial court. See Higginbotham v. Higginbotham, 857 So.2d 341, 341 (Fla. 2d DCA 2003) ("If a judicial system is trying to reach a child placement decision in the best interest of the child, it is difficult to grasp how it is in the best interest of the child to deplete the resources of the family [through a costly parenting assessment]."). We further note that although Mr. Rigsbee's financial affidavit suggests his income was almost twice that of Mrs. Hastings, it appears that Mrs. Hastings was responsible for half of the parenting coordinator's charges and Mr. Rigsbee was responsible for the other half.
[2] We note that information contained in a study conducted pursuant to section 61.20 may be considered by a trial court and "the technical rules of evidence do not exclude the study from consideration." This provision has no application in the instant case since the parenting coordinator was not acting under the authority of section 61.20.